PETER A. SCHEY (CAL. BAR NO. 58232)
CARLOS R. HOLGUIN (CAL. BAR NO. 90754)
CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693
Facsimile: (213) 386-9484
Email: pschey@centerforhumanrights.org
        crholguin@centerforhumanrights.org

BENJAMIN L. CRUMP, ESQUIRE (FL BAR NO. 72583)
PRESIDENT, NATIONAL BAR ASSOCIATION
PARKS & CRUMP, L.L.C.
240 N. Magnolia Drive
Tallahassee, FL 32301
Telephone: (850) 222-3333
Email: bcrump@parkscrump.com

Counsel for Plaintiff
(Plaintiff's Counsel Continued Next Page)

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUTULU SHAKUR,<br><br>    Plaintiff,<br><br>  - vs -<br><br>DAVID SHINN, WARDEN, BUREAU OF PRISONS;<br>FEDERAL BUREAU OF PRISONS, UNITED STATES DEPARTMENT OF JUSTICE;<br>UNITED STATES PAROLE COMMISSION, UNITED STATES DEPARTMENT OF JUSTICE,<br><br>    Defendants.\_ | Case No. _____<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>(CLASS ACTION) |

Plaintiff's Counsel Continued:

MICHAEL BRENNAN (CAL. BAR NO. 40436)
HEIDI RUMMEL (CAL. BAR NO. 183331)
POST-CONVICTION JUSTICE PROJECT
USC GOULD SCHOOL OF LAW
699 Exposition Blvd.
Los Angeles, CA 90089
Telephone: 213.740.2865
Facsimile: 213.821.5746
Email: mbrennan@law.usc.edu
        hrummel@law.usc.edu

PROFESSOR LENNOX S. HINDS (NY BAR NO. 1696574)
NATIONAL CONFERENCE OF BLACK LAWYERS
75 Maiden Lane, Suite 222
New York, NY 10038
Telephone: (212) 864-4445
Email: LennoxHinds@aol.com

Of Counsel:

MICHAEL W. WARREN (NY BAR NO. 1686856)
LAW OFFICE OF MICHAEL W. WARREN, P.C.
30 Wall Street, Suite 800
New York, New York 10005
Telephone: 212.709.8200
Facsimile: 212.943.230
Email: tarifwarren@aol.com

TERI THOMPSON (GA BAR NO. 443999)
TERI THOMPSON, LLC
2330 Scenic Highway
Snellville, Georgia 30078
Telephone: 770.674.2890
Facsimile: 888.329.7330
Email: terithompson17@gmail.com

/ / /

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 2 -

# I. PRELIMINARY STATEMENT

1.   Having served over thirty years of his federal sentence under the Parole Commission and Reorganization Act of 1976 ("PRCA"), Plaintiff Mutulu Shakur became eligible for release on "mandatory parole" pursuant to 18 U.S.C. § 4206(d) on February 10, 2016. Rather than release Shakur on mandatory parole in February 2016, the U.S. Parole Commission ("Commission") scheduled a hearing to determine Shakur's mandatory parole on April 7, 2016.

2.   The Commission ultimately denied Plaintiff mandatory parole under the exceptions described in 18 U.S.C § 4206(d), finding his 1990 positive drug test and four phone-related infractions over 30 years of incarceration to be "serious" and "frequent" institutional violations under the meaning of § 4206(d). The Commission further found a likelihood Plaintiff would commit future crimes upon release based on Mr. Shakur's non-violent political beliefs and use of the term "stiff resistance" to occasionally sign correspondence. Plaintiff has not had a single rule violation during thirty years of incarceration involving violence or the threat of violence, he has an excellent prison record according to Bureau of Prison's ("BOP") staff, and has for decades renounced the kind of criminal conduct he was engaged in more than thirty years ago to further political ends. He has unswervingly and consistently expressed support for peaceful and lawful steps to address issues of social justice.

3.   Regarding federal parole determinations and Commission interpretations

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 3 -

of federal law, a federal court may adjudicate whether the Commission has (1) acted outside of or misinterpreted its statutory or regulatory mandates; (2) made a decision that was arbitrary, irrational, unreasonable, irrelevant or capricious; or (3) violated the Constitution.

4.    In violation of its enabling statute, promulgated regulations, fundamental fairness required by the due process and equal protection guarantees of the Fifth Amendment, and freedom of speech enshrined in the First Amendment, the Commission in this case, *inter alia* –

(1) misinterpreted its enabling statute § 4206 to make a denial of mandatory parole under § 4206(d) effectively a permanent denial of parole by refusing to consider release under § 4206(a) when the Commission denies parole under § 4206(d);

(2) proffered pretextual and irrational reasons for its denial of mandatory parole, including implausible interpretations of the terms "seriously" and "frequently" as used in § 4206(d);

(3) impermissibly considered and retaliated against the content of Plaintiff's protected and entirely non-violent political speech in its denial of parole;

(4) failed to give Plaintiff and counsel notice prior to the parole hearing, as required under its own regulations, of letters and testimony on which it relied in its denial of parole;

(5) in violation of its regulations, considered ancient non-violent prison rule

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 4 -

violations and non-violent statements made by Plaintiff not considered in prior

parole hearings to deny parole in 2016; and

(6) allowed and relied upon irrelevant and unsupported testimony from a

former prosecutor and an FBI investigator as to Plaintiff's current state of mind

and likelihood to recidivate, ignoring its mandate to operate independently of

other bureaus in the Department of Justice.

5.   The Commission also treated Plaintiff far differently from similarly

situated inmates who have been considered for mandatory parole in the past two

years. Based on records released by the Commission on September 23, 2016, in

response to a request for documents under the Freedom of Information Act

("FOIA") of all mandatory parole (§ 4206(d)) Notices of Decision issued over

the past two years (the time period covered by the FOIA request), the

Commission has not denied mandatory parole to any inmate with an institutional

violation history similar to Plaintiff's prison history.

## II. JURISDICTON AND VENUE

6.   This Court has jurisdiction over this action pursuant to U.S. Const.

Art. III; 28 U.S.C. § 1331 (federal question jurisdiction).

7.   Plaintiffs' prayer for declaratory relief is brought pursuant to 28

U.S.C. §§ 2201 and 2202.

8.   Venue is properly in this court pursuant to 28 U.S.C. § 1391(b) and

(e)(1), (2), and (4), because Plaintiff is detained in this judicial district.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 5 -

### III. PARTIES

9.   Plaintiff Mutulu Shakur is incarcerated at the United States Penitentiary, Victorville (USP Victorville), 13777 Air Expressway Blvd., Victorville, CA 92394, under Bureau of Prisons Register No. 83205-012.

10.   Defendant David Shinn is the Warden of the United States Penitentiary, Victorville (USP Victorville), 13777 Air Expressway Blvd., Victorville, CA 92394. As Warden, Defendant Shinn has custody of Plaintiff.

11.   Defendant the Federal Bureau of Prisons is a United States law enforcement agency responsible for the administration of the federal prison system.

12.   Defendant the U.S. Parole Commission is the federal agency responsible for making parole decisions regarding Plaintiff's release or continuation in custody.

### IV.  CLASS DEFINITION

13.   The proposed class pertains only to Plaintiff's First Claim for Relief: violation of the Parole Commission and Reorganization Act, 18 U.S.C. § 4206(d), as interpreted and applied in 28 C.F.R. § 2.53, and Fifth Amendment due process and equal protection, by effectively making denial of mandatory parole under § 4206(d) a permanent denial of parole and refusing to consider release under § 4206(a) when the Commission denies parole under § 4206(d),

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
- 6 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

and by failing to issue and consistently apply standards regarding the Commission's interpretation of the terms "serious" and "frequently" as used in § 4206(d).

14.    Pursuant to Rules 23(a)(1)-(4) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiff brings this action as a class action on behalf of the following proposed class: All current United States Bureau of Prisons' inmates (1) denied parole under 18 U.S.C. § 4206(d) who the Parole Commission failed or refused to consider for release on parole under § 4206(a), or (2) whose parole was denied based on the prisoner having committed a "serious" rule violation or having "frequently" violated prison rules without the Commission having applied standards known to the prisoner regarding the Commission's interpretation of these terms.

15.    The size of the class likely numbers several hundred prisoners and is so numerous that joinder of all members is impracticable.

16.    The claim of Plaintiff and those of the proposed class members raise common questions of law and fact. These questions are common to the named parties and to the members of the proposed class because Defendant, the U.S. Parole Commission has acted or continues to act on grounds generally applicable to both the Plaintiff and proposed class members. Plaintiff's claim is typical of the class claim.

17.    The prosecution of separate actions by individual members of the class

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

would create a risk of inconsistent or varying adjudications establishing

incompatible standards of conduct for Defendant US Parole Commission.

Prosecution of separate actions would also create the risk that individual class

members will secure court orders that would as a practical matter be dispositive

of the claims of other class members not named parties to this litigation, thereby

substantially impeding the ability of unrepresented class members to protect

their interests.

18.   Defendant US Parole Commission, its agents, employees, predecessors

and successors in office have acted or refused to act, or will act or refuse to act,

on grounds generally applicable to the class, thereby making appropriate

injunctive relief or corresponding declaratory relief with respect to the class as a

whole. Plaintiff will vigorously represent the interests of unnamed class

members. All members of the proposed class will benefit by the action brought

by Plaintiff. The interests of the Plaintiff and those of the proposed class

members are identical. Plaintiff's counsel includes attorneys highly experienced

in federal class action litigation involving issues of statutory construction.

V.      RULES RELATING TO U.S. PAROLE COMMISSION

19.   Congress passed the PCRA[1] in 1976 to "provide[] an infusion of due

_____

[1] Pub. L. No. 94-233, 90 Stat. 219 (1976), now codified (as amended) at 18
U.S.C. §§ 4201-4218.

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

process in Federal parole procedures,"[2] which Congress characterized at that time as "the single most inequitable, potentially capricious, and uniquely arbitrary corner of the criminal justice map."[3]

20. Under the PCRA, the Parole Commission would have nine members: a chair, three National Commissioners who would sit on the National Appeals Board, and five Regional Commissioners who would make first-level parole decisions in their geographic regions. *See* 18 U.S.C. §§ 4202, 4204(a)(5).

21. The Sentencing Reform Act of 1984 ("SRA"), at § 218(a)(5), 98 Stat. 2027, abolished federal parole. However, Section 235(b)(1)(A), 98 Stat. 2032, kept the Parole Commission alive for five years to process cases of prisoners convicted of crimes committed before the effective date of the SRA. Since that time, Congress has periodically extended the life of the Commission to provide parole hearings for a dwindling number of long-term prisoners sentenced under the PCRA.[4] In 1997, Congress decreased the number of Commissioners to five.[5] Currently there are only three acting Parole Commissioners.[6]

---

[2] H.R. Rep. 94-184, 94th Cong. 1st Sess. 2 (1975).

[3] *Id.*

[4] The life of the Commission was last extended by the Parole Commission Extension Act of 2013, Pub. L. 113-47, 127 Stat. 572 (extending the Commission until October 31, 2018).

[5] *See* National Capital Revitalization and Self-Government Improvement Act of 1997, § 11231(d), Pub. L. No. 105-33, 111 Stat. 745-46 (1997).

[6] *See* Parole Commission webpages, "Meet the Chairman" and "Meet the Commissioners" at https://www.justice.gov/uspc/meet-chairman and

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

22.   Under the PCRA, a Hearing Examiner presides at each parole hearing, prepares a summary of findings, and makes a recommendation. In the normal course, that recommendation is reviewed by a second examiner, and a third, if necessary, and finally by a Regional Commissioner. 28 C.F.R. §§ 2.13(a), 2.23(b).[7] In some cases, such as Plaintiff's case, the Hearing Examiner or Commissioner designates the case to be an "Original Jurisdiction" case under 28 C.F.R. §2.17. In an Original Jurisdiction case, the entire Commission (currently only three people) votes on the disposition of the parole decision and then also votes on a prisoner's appeal of the parole decision.[8]

23.   At present, the same three Commissioners who initially deny parole in Original Jurisdiction cases then sit as a "National Appeals Board" ("NAB") under 28 C.F.R. § 2.27 to hear any appeal. As such, there is now no meaningful appellate review of denials made under Original Jurisdiction cases under C.F.R. §§ 2.17 and 2.27.

---

https://www.justice.gov/uspc/meet-commissioners (listing only three members) (last checked March 16, 2018).

[7] It is not clear that the Commission currently designates any of its staff to serve as Regional Commissioners. The Commission appears now to have only three voting members.

[8] *See* 28 C.F.R. § 2.17 ("The decision in an original jurisdiction case shall be made on the basis of a majority vote of Commissioners holding office at the time of the decision.").

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 10 -

## V. STATEMENT OF FACTS

**A.    Plaintiff's Pre-Conviction Background**

24.   Jeral Wayne Williams, now known as Mutulu Shakur, was born August 8,
1950 in Baltimore, Maryland, the only son of a single mother blinded from
glaucoma. Growing up in an African American community in Queens, Plaintiff
was confronted with gang violence and was profoundly moved and disturbed by
the epidemic of drug addiction, grinding poverty and unemployment among the
youth.

25.   At the age of 16, Plaintiff joined the Republic of New Afrika and the New
Afrikan Independence movement, a social and political movement that
advocated for the establishment of an African American state within the U.S.
where African Americans could live outside of institutional discrimination.
These groups advocated that their goals should be achieved through plebiscites
and elections.

26.    When he was 20 years old, Plaintiff volunteered at Lincoln Hospital in
the Bronx in New York. He eventually helped build the detox program at
Lincoln. He traveled to Canada and China to study acupuncture and returned to
Harlem where he and colleagues started the Black Acupuncture Advisory
Association of North America (BAAANA). He was instrumental in developing
protocols for acupuncture treatment of drug addiction. Plaintiff also helped
prepare petitions to the United Nations in conjunction with the National

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

- 11 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

Conference of Black Lawyers regarding discrimination and disenfranchisement black Americans were experiencing in the United States.

27.    Unbeknownst to Plaintiff at the time, the FBI considered his lawful activities sufficient to warrant targeting him through its Counter Intelligence Program (COINTELPRO).

28.    COINTELPRO became public for the first time in March 1971. FBI records have disclosed that COINTELPRO's purpose was to disrupt, neutralize and destroy groups and individuals deemed subversive.[9] FBI Director J. Edgar Hoover ordered FBI agents to "expose, disrupt, misdirect, discredit, neutralize or otherwise eliminate" the activities of these movements and their leaders.[10] Under the program "[g]roups and individuals have been assaulted, repressed, harassed and disrupted because of their political views, social beliefs and their lifestyles … Unsavory, harmful and vicious tactics [were] employed—including anonymous attempts to break up marriages, disrupt meetings, ostracize persons from their professions, and provoke target groups into rivalries that might result

---

[9] This included anti-Vietnam War organizers, activists of the civil rights movement, members of the Black power movement, the women's movement, solidarity organizations, student groups, the Native American movement and Puerto Rican independence groups.

[10] Introduction and Summary (PDF), *Intelligence Activities and the Rights of Americans - Church Committee final report. United States Senate website* (United States Government), 1976-04-26. p. 10. Archived (PDF) from the original on 2014-04-18. Retrieved 2014-07-15.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

in deaths."[11] COINTELPRO in some instances encouraged committed civil rights individuals to withdraw from grassroots organizing and become involved in armed defensive actions.

29.  United States District Judge Haight, Jr., the trial judge in Plaintiff's case, observed --

> Documents obtained by Shakur and associates under the Freedom of Information Act demonstrate that for a considerable time Shakur and the Republic of New Afrika, with which Shakur was at all pertinent times closely associated, have been the subject of illegal surveillance, harassment, and disinformation by the FBI as part of that lamented, unconstitutional project known as COINTELPRO ...[12]

In Judge Haight's view, "Petitioner while exercising constitutional liberties was illegally pursued by federal law enforcement officers ... [T]he rights of Petitioner ... were violated by the COINTELPRO program."[13] *Having failed to review the record, one of the specific reasons the Commission provided for denying parole was* Plaintiff's *occasional accurate reference to himself as a*

---

11 *Intelligence Activities and the Rights of Americans Book II, Final Report of the Select Committee to Study Governmental Operations with respect to Intelligence Activities,* United States Senate (Church Committee), Retrieved May 11, 2006.

12 *United States v. Shakur*, 1988 U.S. Dist. LEXIS 2762, pp. 16-17 (1988).

13 *United States v. Shakur,* 1990 U.S. Dist. LEXIS 16219, 1990 WL 200646 (S.D.N.Y. Nov. 28, 1990)

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

1
2
*victim of the COINTELPRO program.* The Commission unreasonably

3
concluded this showed he is likely to re-offend if released.

4
**B.    Plaintiff's Indictment, Conviction, and Sentencing**

5
6
30.    On April 21, 1982, Plaintiff and ten others were indicted in the Southern

7
District of New York. The indictment alleged that from December 1976 to

8
October 1981, an integrated "revolutionary armed task force" called simply

9
10
"The Family" committed a succession of robberies of banks and armored trucks

11
in the Northeast.14 Additionally, Plaintiff and others were charged with

12
participating in a 1979 prison escape of Assata Shakur. The Family's final

13
14
crime, the "Brinks robbery" of October 20, 1981, resulted in the shooting deaths

15
of a Brinks guard and two police officers as some of the defendants attempted to

16
flee the scene of the robbery. Four participants in the Brinks robbery were

17
apprehended fleeing the scene, including at least one who admitted killing a

18
19
Brink's guard. Several others were arrested later, not including Plaintiff. These

20
defendants were tried together in 1983. In a "mixed" verdict on the

21
Government's claims, none were convicted of the murders. *United States v.*

22
23
*Shakur*, 565 F.Supp. 241 (S.D.N.Y. 1987), *rev'd on other grounds*, 817 F.2d

24
25
26

_____

27
14 The indictment charged that the defendants conspired to violate the Racketeer
28
Influenced and Corrupt Organizations Act ("RICO"), two bank robberies, two
armed bank robberies and two bank robbery killings.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

- 14 -

189 (2d Cir. 1987).[15]

31.   Plaintiff was arrested on February 11, 1986. His jury trial took place in 1988.

32.   On information and belief, no evidence at trial showed that Plaintiff ever killed anyone.[16] Co-defendant Tyrone Rison admitted killing a guard during a robbery and is believed to have received a *six-year sentence* in return for testifying that Plaintiff was one of the founders of the "Family" and one of its core members. Throughout the trial the prosecution accused the Family and Plaintiff of engaging in crimes to further a political agenda. The indictment alleged a conspiracy to commit several "fund-raisers" or armed robberies to raise money for the political activities of the conspiracy members.

33.   The jury found Plaintiff and Ms. Buck guilty of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, participation in a racketeering enterprise, bank robbery, armed bank robbery, and bank robbery murder. At the sentencing of Plaintiff, Judge Haight said, "many people have written to me on behalf of Petitioner… It is said that he is a skilled and

---

[15] The first Brinks trial was held in 1983, before Judge Duffy and a jury. Six of the eleven defendants named in the indictment were tried: two of the defendants were convicted on RICO counts, two were found guilty as accessories after the fact, and two were acquitted on all charges.

[16]  The Government alleged it had a taped statement of Plaintiff admitting that he was present or involved in a robbery where a death occurred. However, after conducting an audibility hearing, Judge Haight ruled that the tapes were unintelligible and not admissible evidence.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
- 15 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

compassionate healer who has done much good.  I believe that to be true." Judge

Haight added, "this case represents an American tragedy of broader dimensions

than the Government is willing to acknowledge."

**C.    Plaintiff's Overall Institutional Conduct**

34.    Plaintiff has led a highly productive and exemplary life in prison,

influencing his stepson Tupac Shakur's career as a world-wide renowned hip hop

artist with messages of non-violence that reached millions of young people.

35.    As established by letters in the record and Plaintiff 's statements at several

parole hearings, throughout his incarceration Plaintiff has been outspoken

against gang violence and crime. He has consistently expressed support for

peaceful and constructive changes in all matters involving racial disparities and

social justice. He has never in thirty years of incarceration supported or in any

way implied support for criminal conduct or violence to achieve social justice.

36.    There is overwhelming uncontroverted evidence in the record of

Plaintiff's rehabilitation and positive conduct. In a parole hearing fifteen years

ago held on July 17, 2002, the Hearing Examiner stated:

> And we've also, of course looked at your salient factor score, which gives
>
> us an idea of what kind of a parole risk you would be. And of course, you
>
> had no prior record prior to this series of events. *And so your salient factor*
>
> *score is the best score it can be*. It's a ten, which would indicate that you
>
> would be falling in the good parole risk category. [Emphasis added].

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 16 -

37.   A BOP supervisor testified at the 2002 hearing:

Well, I'm here on Shakur's behalf. He asked me to come … and speak up for him. And also want to say as (inaudible) and *it's been honor [supervising him]*. And he's been working for me probably 5 or 6 years, I'm not sure how long. He's been an asset to the job. He's an asset to me. I can say he's an asset in general.  [Emphasis added].

38.   A September 29, 2002, Initial Hearing Summary provides the following assessment of Plaintiff's conduct:

Subject has programmed extensively while in BOP custody. *His accomplishments are well documented in the record and also in the progress report dated 5/16/2002*. In addition, subject submitted a copy of a certificate dated September 2002 in which he completed 33 hours in the CHANGE Psychotherapy Group program. Subject indicated that he has been involved in educational and recreational activities from a cultural diversity standpoint, in that he has helped line up speakers for workshops ... Subject also indicated that he is involved in working with older inmates in helping them and himself understand the impact of aging and stress-related factors associated with institution life.

39.   The Statutory Interim Hearing Prehearing Assessment prepared for Plaintiff's September 9, 2004, review states in part:

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 17 -

*… the Subject has satisfactory institutional adjustment.* He currently works 32 hours per week on Laundry detail. On 2/13/03, he received a certificate for completion of the Elder Inmate Psychotherapy Group. He has maintained clear institutional conduct for the past 36 months. He has completed the A&O Program and will participate in the Pre-Release Program prior to release. It is noted that subsequent to the Initial Hearing, this case was classified as an Original Jurisdiction case because of political interest.

40. In January 2005 Plaintiff's Unit Manager, A. Kingston, submitted a memorandum to his superiors stating –

[Plaintiff] has participated in the programs as recommended by his Unit Team. He has completed his GED requirements and his obligations to the Inmate Financial Responsibility program. He has earned good work performance evaluations … [T]he Unit Team does not believe this inmate to be a management problem and a custody reduction would not pose a threat to the security of this institution …

41. The Hearing Summary of Plaintiff's February 8, 2005 hearing states: Since the last hearing this subject has completed Victim Impact, Stress Management and Anger Management. He participates in the Elder Cycle Therapy Group and he is an active member of the Suicide Watch

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

- 18 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

Team … The subject receives good work reports from his job assignment ...

42.  In 2006 Plaintiff developed a proposal for the development of a program under which able-bodied inmates would provide assistance to inmates with physical or mental disabilities. The proposal included recommendations such as inmates helping disabled inmates with cell cleanliness, education, support groups, discussion groups, etc.

43.  The Hearing Summary of the parole hearing conducted December 11, 2007, states in part:

[Plaintiff] is also a founding member of the Coleman Penitentiary No. 2 NAACP Chapter and received a certificate for this. Also in Atlanta, he took 6 hours of Group Psychotherapy Courses. The subject also participated in Culture Diversity Classes in 2006 and 4 hour Suicide Prevention Course in April 2005.

44.  Plaintiff's Statutory Interim Hearing Pre-Hearing Assessment dated November 5, 2007, states in part:

… the Subject has satisfactory institutional adjustment. He currently works 32 hours per week on Laundry detail … *He has maintained clear institutional conduct for the past 36 months. He has completed the A&O Program and will participate in the Pre-Release Program prior to release* … [Emphasis supplied].

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

- 19 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

45.   Plaintiff's December 2, 2009, Hearing Summary states in part:

*Discipline: None* ... [Plaintiff] has completed five programs since

his hearing in 2007. They include Biography, Explorers in Early

America, ... Engineering and Empire, and History and Science Part

1. [Emphasis added].

46.   Plaintiff's March 15, 2012 Interim Hearing Pre-Hearing Assessment

states:

*[T]he subject's adjustment since his last hearing has been without*

*incident*. He is currently assigned as Unit Orderly. He has completed

seven education courses: Beginning Crochet, Beginning Beading,

Intermediate Art, DB Film Critic, Beginning Wellness, Delta Basic

Guitar and Beginning Art. He is currently enrolled in Human Rights …

His institutional adjustment has been satisfactory. *He has participated in*

*programs, maintained a job assignment and has not incurred any DHO*

*infractions since his last hearing* … . [Emphasis added].

47.   Plaintiff's July 30, 2014 Interim Hearing Pre-Hearing Assessment states:

Since his last hearing on 7/2/2012 the subject has completed 98 hours

of educational/vocational programming as follows: Political Science

(10 hrs.); House of Healing (10 hrs.); Beginners Voice/Vocal (6 hrs.);

African History (10 hrs.); Breaking Barriers (10 hrs.); Creative Writing

(10 hrs.); Beginning Crochet (12 hrs.); African History (30 hours) ….

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 20 -

48.   The Hearing Summary of Plaintiff's August 12, 2014 parole hearing

states in part:

> *Testimony of Case Manager Mico: Ms. Mico stated that the offender*
> *is very respectful of staff and inmates and has continuously availed*
> *himself to programs.* She testified that the offender recently suffered
> a stroke … . [Emphasis added].

49.   Throughout this time, Plaintiff maintained the best score possible on the

Commission's scale of parole risk, a 10 salient factor score. The Salient Factor

Score ("SFS") is explicated at length in regulations promulgated at 28 C.F.R.

§ 2.20 (containing Parole Guidelines and Salient Factor Scoring Manual).

VI.   THE COMMISSION'S MISINTERPRETATION AND
      MISAPPLICATION OF ITS ENABLING STATUTE AND VIOLATION
      OF ITS REGULATIONS AND THE CONSTITUTION

**A.    The Commission's promulgated regulation on mandatory parole
       conflicts with the authorizing statute and overall statutory scheme
       and prejudices potential parolees with severe, permanent
       adjudications that are arbitrary, irrational, and capricious.**

50.   Under the normal course, the PCRA affords all prisoners parole hearings

under the "discretionary parole" criteria of 18 U.S.C. § 4206(a), which requires

the Commission to release a prisoner on parole if the prisoner: (1) has

"substantially observed the rules of the institution … to which he has been

confined;" (2) if "release would not depreciate the seriousness of his offense or

promote disrespect for the law;" and (3) if "release would not jeopardize the

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 21 -

public welfare." 18 U.S.C. § 4206(a).

51.   If an inmate is not released following the initial discretionary parole

hearing, subsequent proceedings ("statutory interim hearings") are held every

two years under the same § 4206(a) criteria. *See* 18 U.S.C. § 4208(h)(2); 28

C.F.R. § 2.14.

52.   Congress also provided that prisoners sentenced to longer terms who had

not received discretionary parole after two thirds of their term or 30 years were

afforded a second *more liberal path* to parole under 18 U.S.C. § 4206(d):

> Any prisoner, serving a sentence of five years or longer, who is not
>
> earlier released under [18 U.S.C. § 4206(a)] …, shall be released on
>
> parole after having served two-thirds of each consecutive term or
>
> terms, or after serving thirty years of each consecutive term or terms
>
> of more than forty-five years including any life term, whichever is
>
> earlier: Provided, however, That the Commission shall not release
>
> such prisoner if it determines that he has seriously or frequently
>
> violated institution rules and regulations or that there is a reasonable
>
> probability that he will commit any Federal, State, or local crime.

Congress intended this "mandatory parole" provision in § 4206(d) to

provide "*a more liberal criteria for release* on parole for prisoners with

long sentences after they have completed two-thirds of any sentence or

thirty years, whichever occurs first." S. Rep. No. 94-648, at 27 (1976)

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 22 -

(Conf. Rep.) (emphasis added). Congress explained the purpose of the sections:

> The purpose of [Section 4206(d)] is to insure at least some minimum period of parole supervision for *all except those offenders who have the greatest probability of committing violent offenses following their release* so that parole supervision is part of their transition from the institutional life of imprisonment to living in the community."

H. Rep. 94-648, 94th Cong., 2d Sess. 27, 1976 U.S.C.C.A.N. 351 (emphasis added).

53.   However, as interpreted by the Commission, § 4206(d) turns out to be a far harsher standard than § 4206(a): (1) The Commission's interpretation of §4206(d) in its corresponding regulations does not permit consideration for release under § 4206(a) once the Commission denies release under § 4206(d); (2) the Commission's finding that a prisoner "seriously" and "frequently" violated prison rules leaves prisoners ineligible for release under § 4206(d) and the Commission then refuses to consider release under § 4206(a), even though the same rule violations may not bar release under § 4206(a).

54.   The Commission's rule on mandatory parole is promulgated at 28 C.F.R. § 2.53. Without support in the text of the statute, the Commission's rule states a prisoner denied mandatory parole will serve "until the expiration of his sentence":

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 23 -

2.53 Mandatory parole. (a) A prisoner … shall be released on parole after … completion of 30 years of each term or terms of more than 45 years (including life terms … unless … the Commission determines that there is a reasonable probability that the prisoner will commit any … crime or that the prisoner has frequently or seriously violated the rules of the institution in which he is confined. *If parole is denied pursuant to this section, such prisoner shall serve until the expiration of his sentence less good time.* [Emphasis added].

55.   Consistent with the Commission's regulation, a Commission General Counsel's memo of September 22, 2011, states that after serving two thirds of their sentences, inmates are only eligible for release under § 4206(d), not § 4206(a). Memorandum of Commission General Counsel to Commission dated September 22, 2011 (September 22, 2011).

56.   18 U.S.C. § 4208(h)(2) clearly provides that all prisoners are statutorily entitled to Interim Hearings. In order to comply with § 4208, the Commission does afford prisoners denied mandatory parole with subsequent Interim Hearings, but provides that all subsequent Interim Hearings will proceed only under § 4206(d) rather than the normal §4206(a) standard:

2.53-06. Subsequent hearings for long-term prisoners denied mandatory parole. If the denial of mandatory parole results in a continuance for the prisoner that exceeds the applicable time period for an interim hearing

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

- 24 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

(either every 18 or 24 months), the prisoner must be scheduled for a subsequent interim hearing. *At the interim hearing, the prisoner shall be considered for parole under the mandatory parole criteria of §2.53(a).*

USPC Rules and Procedures Manual 2.53-06 (June 30, 2010) (emphasis added).

57.   In most cases, the effect of conducting subsequent interim hearings under the mandatory parole criteria of § 4206(d) and C.F.R. § 2.53 is to deny parole in perpetuity (as rule 2.53 states, "until expiration") because no relevant fact (past prison rule violations) under § 2.53 could change between the initial mandatory parole hearing and subsequent hearings.

58.   In 2014, a Hearing Examiner in this case recommended Plaintiff be paroled in early 2015 pursuant to § 4206(a). The recommendation was based on Plaintiff's rehabilitation and "substantial observ[ance]" of prison regulations over 28 years. Hearing Summary (August 19, 2014), at 4. This recommendation was rejected by the USPC solely because of a single telephone rule violation in 2013. Notice of Action (September 4, 2014).

59.   However, two years later, in his 2016 hearing, under the Commission's interpretation of § 4206(d), Plaintiff's history of substantially observing institutional regulations as reflected, *inter alia*, in his superior 10 Salient Factor Score and 2014 Hearing Examiner report, is irrelevant because a 30-year old positive drug test (of questionably validity) , and a handful of relatively minor

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

- 25 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

telephone rule violations, bar release under § 4206(d).

60.   Nothing in the statutory language or Congressional record supports the Commission's interpretation of § 4206(d) as expressed in the Commission's parole decisions and C.F.R. § 2.53. The Commission's interpretation of § 4206 is also inconsistent with the PCRA's statutory scheme because Plaintiff and similarly situated prisoners denied release under § 4206(d) are entitled to and afforded subsequent interim hearings every two years pursuant to 18 U.S.C. § 4208(h)(2). These hearings are superfluous if an ancient rule violation forever bars release on parole.

**B.**    **The Commission violated its pre-hearing disclosure obligations.**

61.   Section 4208(b) requires that at least thirty days prior to any parole determination the prisoner shall be provided with reasonable access to any report or document to be used by the Commission in making its determination. 28 C.F.R. § 2.55 provides in relevant part:

At least 60 days prior to a hearing scheduled pursuant to 28 CFR
2.12 or 2.14 each prisoner shall be given notice of his right to
request disclosure of the reports and other documents to be used by
the Commission in making its determination.

(2) A prisoner may also request disclosure of documents used by
the Commission which are contained in the Commission's regional
office file but not in the prisoner's institutional file.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 26 -

(3) Upon the prisoner's request, a representative shall be given

access to the presentence investigation report reasonably in advance

of the … hearing

(b) Scope of disclosure. *The scope of disclosure under this section is*

*limited to reports and other documents to be used by the Commission*

*in making its determination. At statutory interim hearings conducted*

*pursuant to 28 CFR 2.14 the Commission only considers information*

*concerning significant developments or changes in the prisoner's*

*status since the initial hearing or a prior interim hearing.* 28 CFR

§ 2.55. Therefore, prehearing disclosure for interim hearings will be

limited to such information …

28 C.F.R. § 2.55

62.    None of these disclosure rules were complied with in Plaintiff's case

despite requests by Plaintiff and his counsel for pre-hearing disclosures.[17]

**C.    The 27-year old positive drug test does not, as the Commission
claims, statutorily prevent the Commission from releasing Plaintiff
on parole.**

63.    Plaintiff has been denied parole in part because of a single positive drug

test some 27 years before his parole hearing. Notice of Action (November 25,

---

[17] The Parole Commission's September 23, 2016 response to a FOIA request
disclosed that prior to the April 2016 hearing the Commission received letters
opposing Plaintiff's release, including one from Assistant U.S. Attorney Elliot
Jacobson the prosecutor in the case, none of which were disclosed to Plaintiff or
his counsel prior to the April 2016 hearing.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 27 -

2016) at 2. The Commission treated this as a "serious" rule violation barring

Plaintiff from release on parole pursuant to § 4206(d).

64.   The 1990 test reportedly showed the presence of morphine, a drug not

readily available in prisons. Upon being informed of the test, Plaintiff

immediately requested to be retested and also offered to take a DNA test. These

requests were denied. To the best of Plaintiff's knowledge, in 1990 no retesting

was done and the BOP record indicates there was no way for an inmate to

contest a drug test.[18]

65.   At a July 17, 2002, parole hearing the Hearing Examiner considered the

1990 positive drug rule violation and stated "[t]he drug offense will call for 0 to

8 months in the administrative offenses." This result tracks the Commission's

Parole Rescission Guidelines promulgated in C.F.R. §§ 2.20 and 2.36, which

characterize a single instance of drug use as an "administrative rule infraction,"

the *least* among offenses listed, punishable by no more than eight months

extended denial of presumptive parole. *Yet in 2016, fourteen years after stating

the positive drug test would only adversely impact Plaintiff's record for "0 to 8

months," the Commission denied Plaintiff parole relying on the same 1990 drug

test*. The Commission has no known rules or policies regarding what inmates

must present to show past rule violations were not serious or should not now be

---

[18] Plaintiff has a FOIA request pending trying to determine whether retesting
was ever required by BOP, and the extent to which ancient positive drug tests
are ever used by the Parole Commission to find an inmate ineligible for release.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

treated as serious because of the passage of time or other factors. This has

resulted and continues to result in the Commission issuing inconsistent *ad hoc*

decisions when weighing the seriousness of past rule violations in Plaintiff's

case and the cases of similarly situated long-term prisoners..

66.    In the case of *Bowers v. Drew*, Civil Action No. 1:08-CV-2095-WCO

(U.S. District Court Northern District of Georgia), the Commission addressed

issues involving its application of the term "serious" rule violations as used in

§ 4206(d). The Commission "focused on … *[1] the gravity of the 1979 escape*

*attempt and [2] whether the passage of time diminished the seriousness of the*

*prison rule violation.*" *Id*. Docket # 141, at 42 (emphasis added). *See also id*. at

44 ("the Commissioners … are not precluded from reaching the conclusion that

they did in October 2005 [that the attempted escape was a serious rule

violation], … *or they may find that the attempted escape was not so serious*."

(Emphasis added)). The Commission has granted parole to other escapees

(including Sara Jane Moore and Zvonko Busic) and thus has refrained from

characterizing all escapes as serious. *Id*., Memorandum of Commission General

Counsel to Commission (September 22, 2011), Docket 138-7 at 4. Had the

Commission applied a similar reasoning in this case, it would have found that

Plaintiff's 27-year old positive drug test for morphine is not a "serious" rule

violation that forever precludes release on parole. Indeed, Plaintiff cannot find

any case in the Notices of Decision obtained under FOIA where an ancient drug

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 29 -

test was used to deny an inmate mandatory parole.[19]

67.  In addition, in 2016 the Commission relied on Plaintiff's 27-year old

positive drug test even though it had not relied on that rule violation in earlier

hearings, including the 2014 hearing. The Commission's rules clearly state that

at subsequent hearings "the Commission only considers information concerning

significant developments or changes in the prisoner's status since the initial

hearing or a prior interim hearing." 28 CFR § 2.55.

**D.    Plaintiff's most recent 2013 rule violation used to deny parole: A
brief phone call to university students urging them to support
peaceful social change does not indicate Plaintiff is likely to reoffend.
The BOP charge should be vacated because BOP destroyed key
evidence, denied access to an appeal, and the Hearing Officer was not
qualified under BOP's extant rules.**

68.   In its November 2016 decision, the Commission cited what it called

Plaintiff's "most serious incident" involving a February 5, 2013 telephone call

to a group of university students. Notice of Action (November 25, 2016) at 2.

69.   The facts are not in dispute. On February 5, 2013, Plaintiff, at the

invitation of professor Karin Stanford, placed a phone call to Professor Stanford

who placed the call on her speaker phone and invited Plaintiff to say a few

words to a group of students and professors gathered to hear actor/producer

---

[19] Several of the approved mandatory paroles in the Notices of Decision come
with the condition that parolee attend mandatory drug and alcohol programs,
indicating these prisoners had at least one (if not several) drug or alcohol-related
infractions while in custody that were not deemed "serious" for the purposes of
release under § 4206(d).

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 30 -

Danny Glover speak and screen one of his films. Professor Stanford was on

Plaintiff's approved phone call list and had visited him before this phone call.

70.    The sworn declaration of Professor Stanford that is part of the

Commission's record provides insight into Plaintiff's core beliefs and the

arbitrariness of the Commission's reliance on the phone call to find Plaintiff is

likely to reoffend if released on parole:

> In February 2013 I was serving as the Department Chair … in the
>
> CSUN [California State University Northridge] Pan African
>
> Studies Department …
>
> *Mutulu Shakur shared with me his vision and writings on*
>
> *developing a Truth and Reconciliation Commission to address and*
>
> *help heal the historical wounds of slavery and racial injustice in*
>
> *the African American community* …  I thought that upon his release
>
> from prison, Mutulu Shakur would be a positive resource to
>
> students and could visit different college classes to speak about his
>
> ideas focused on healing and reconciliation, peaceful means to
>
> achieve civil rights gains …
>
> On February 5, 2013 … CSUN's Department of Pan African
>
> Studies … co-sponsored a symposium … with … Danny Glover
>
> (actor and producer) who was screening his new Oscar-nominated
>
> documentary …

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

- 31 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

*During a [previous] phone call with Mutulu Shakur … I invited*

*him to call-in to my cell-phone during the event to participate*

*briefly in the discussion.*

During the symposium Mutulu Shakur called … and I placed him

on my phone speaker. He very briefly spoke about his ideas for the

Truth and Reconciliation Commission, historical aspects of the

civil rights movement, … the need to remember the sacrifices of

civil rights workers who were killed in the woods of America, how

much inspiration Danny Glover had brought to people, how the

people have chosen the electoral process and elected President

Obama as a means to get economic, medical and political relief,

and again he returned to the peaceful process for addressing healing

he has long supported as a tool to resolve conflict …

*Mr. Shakur's contribution to the event was positive and he was a*

*voice for healing and reconciliation, which I am very glad students*

*had the opportunity to hear. At no time did Mr. Shakur say*

*anything that was an incitement to violence or criminality. On the*

*opposite, his message was one of working within the system to*

*achieve healing and reconciliation …*

Declaration of Dr. Karen Stanford (April 3, 2016) (emphasis added).

71. The following day, February 6, 2013, BOP Officer G. Odell monitored

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 32 -

the previously recorded call and submitted an incident report, charging Shakur

with violation of 28 C.F.R § 541.3 (212), engaging in a "group demonstration,"

and 28 C.F.R § 541.3 (297), using the telephone to circumvent the ability of

staff to monitor the content of the call or the number called.[20]

72.   *How the call avoided monitoring of the number called or the content of*

*the call was never explained since the number called and content of the call*

*were fully monitored.*

73.   On February 11, 2013 Plaintiff received a Notice of Discipline Hearing

before a Disciplinary Hearing Officer ("DHO") for the alleged violations of

"use of the telephone for abuses other than criminal (§ 212) and engaging in or

encouraging group demo (§ 297)". Notice of Discipline Hearing Before the

DHO (February 11, 2013) at 1. The allegation of engaging in a "group

demonstration" was soon dropped when BOP realized the call was to a group of

students at a university meeting.

74.   Plaintiff requested to have a staff representative, Rec Spec Weeks, and

two witnesses, Sia Castillo, who could testify as a "phone monitoring expert",

and Rec Spec Weeks, who could testify to Plaintiff's role "on the compound in

keeping the peace."

75.   Despite Plaintiff's request that the recording of his phone call be

---

[20] The only incidents of which Plaintiff is aware involving violations of § 541.3
involve inmates using codes in their conversations to avoid monitoring.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
- 33 -
Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

preserved for review by his BOP staff representative and the Disciplinary

Hearing Officer, his request was denied. The recording was erased before his

disciplinary hearing was conducted.

76.   Spoliation is the destruction or significant alteration of evidence, or the

failure to preserve property for another's use as evidence in pending or

reasonably foreseeable litigation. In this case (1) the missing evidence existed at

one time; (2) BOP had a duty to preserve the evidence; and (3) the evidence was

important to Plaintiff 's being able to prove his innocence of the alleged phone

rule violation.

77.   On March 13, 2013 a DHO Hearing was held, presided over by DHO

Officer Diana Elliott. Pursuant to BOP Program Statement § 541.8(b) "A DHO

may not conduct hearings without receiving specialized training and passing a

certification test." On Information and belief, DHO Elliott was *not* certified on

March 13, 2013 when she presided over Plaintiff's DHO hearing.

78.   In *Konopka v. McGrew*, DHO Elliott declared under oath that she was not

DHO certified until Oct. 2013. In it's decision, the Court stated "DHO Elliott…

passed a certification test in October 2013... Indeed, the BOP prohibits DHOs

from conducting hearings unless they have received the requisite certification

and training". 2015 U.S. Dist. LEXIS 36230 (C.D. Cal. 2015).

79.   After being found guilty of violation a telephone rule, hearing Plaintiff

was booked into administrative segregation (solitary confinement). He was not

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 34 -

served with a copy of the DHO decision.

80.    Pursuant to 28 C.F.R. § 542.14(d)(2), "DHO  appeals shall be submitted

initially to the Regional  Director for the region where the  inmate is currently

located." 28 C.F.R. § 542.14(d)(2). The submission period for DHO Appeals is

"20 calendar days of the date the Warden signed the response" and "Appeals to

the Regional Director shall be … accompanied by one complete copy or

duplicate original of the institution Request and response." BOP Policy §

542.15(a) and (b).

81.    While in solitary confinement, Plaintiff wrote to Director of the Bureau of

Prisons, Charles J. Samuels, to request  an extension to file an appeal from the

DHO's decision. Upon release from solitary confinement, Plaintiff submitted a

regional administrative appeal on June 13, 2013, citing due process violations,

freedom of speech, and objecting to the incident report for "failing to specify or

identify any act of misconduct." He had still not been served with the DHO's

decision..

82.    Even though he had never been served with the DHO's decision, tolling

the period to appeal, and had been held in solitary confinement, the appeal was

rejected as untimely.

83.    Plaintiff next submitted a central office administrative appeal dated

August 19, 2013. The appeal explained that Plaintiff had not received the DHO

report. It further states that Plaintiff had made "numerous attempts to obtain the

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

DHO report so that [he] could appeal its sanctions. With the failure of the DHO

to provide [Plaintiff] with a copy of the DHO hearing report, [Plaintiff] decided

to initiate [his] remedy process". Central Office Administrative Remedy Appeal,

dated August 19, 2013, pg. 1. Plaintiff attached a signed Form A0148 (request

to Staff) from his counselor, Counselor Prieto, verifying that the DHO report

had not been provided to the Unit Team and/or inmate as of on July 28, 2013.

84.   On April 20, 2016, the phone violation was used as a key basis to deny

Plaintiff mandatory parole.

85.   In or about 2017 Plaintiff learned that DHO Elliott may not have been

qualified to serve as a DHO. Other inmates' rule violations issued by DHO

Elliott had been expunged.

86.   On July 10, 2017 Plaintiff therefore resumed his efforts to have the 2013

rule violation set aside. He submitted a new request for informal resolution of

the rule violation.  On August 3, 2017 Plaintiff submitted a request for

administrative remedy to the Warden. On September 25, 2017, Plaintiff

submitted a regional administrative appeal. On October 31, 2017 Plaintiff

submitted a central office appeal. On January 11, 2018 Plaintiff submitted a

regional administrative appeal. Despite these efforts, to date Defendant the BOP

has not set aside Plaintiff's 2013 telephone rule violation that Defendant the

Parole Commission found was his "most serious" violation warranting denial of

parole in 2013.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 36 -

87.   In this Complaint, particularly since in 2016 this rule violation was found to be the most "serious" one requiring denial of parole, Plaintiff seeks an Order vacating the rule violation because (1) the phone call did not violate any known rule issued by the BOP, (2) the key evidence (recording of the telephone call) was destroyed prior to the disciplinary hearing despite Plaintiff requesting that the evidence be preserved, (3) the BOP circumvented Plaintiff's ability to administratively appeal the rule violation by running the clock on his time to appeal while he could not submit his appeal to anyone, and (4) the Disciplinary Hearing Officer, Diana Elliot, was not qualified for and had not received the training required under BOP rules set forth at 28 CFR § 541.8(b) to preside as a Disciplinary Hearing Officer.

   **E.   The Commission has failed to adopt or apply any known standards on the meaning of "frequent" rule violations. A handful of old telephone rule violations over 30 years do not show Plaintiff "frequently" violated prison rules or is likely to reoffend if released on parole.**

88.   Section 4206(d) provides that a prisoner shall not be released under that sub-section if he has "frequently violated institution rules." On the other hand, a prisoner may be released on parole under § 4206(a) even if he has frequently violated institution rules depending on the seriousness and age of those violations.

89.   The Notice of Action dated November 25, 2016 concludes that four alleged telephone rule infractions in about twenty-seven years, none dealing

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

- 37 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

with serious phone abuse (such as those described in the rules involving plans to escape, plans to obtain drugs, plans to commit crimes, etc.), show that Plaintiff has "frequently" violated institution rules and therefore is statutorily ineligible for release under § 4206(d), and is a threat to reoffend if released.[21]

90.    "Frequent" means "occurring often or in close succession; habitual; constant." *The Oxford Desk Dictionary* at 321. *Four phone violations over a period of about thirty (30) years hardly involves "frequently" violating prison rules.* *This amounts on average to a minor rule violation once every seven years in custody.* Congress would not have called § 4206(d) a "more liberal" approach to release on parole if four phone calls that would *not* block release under the normal standard of § 4206(a), permanently blocks release under § 4206(d).

91.    Defendant Commission has failed to issue standards or rules consistently applied regarding how the body interprets the term "frequently." To date, Plaintiff has no idea what standards the Commission follows when deciding that an inmate has "frequently" violated prison rules such that he is, in the Commission's view, forever ineligible for release on parole.

92.    As explained at the hearing, in each instance the phone calls at issue involved Plaintiff encouraging non-violence, anti-gang messaging, healing and

---

[21] The two 2007 telephone infractions involved attempted "outreach to the public" without authorization because the phone call involved an *anti-violence* music CD project.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 38 -

reconciliation. The 2001 and 2007 telephone calls involved a music project which included a specific anti-gang/anti-violence message.

93. The Commission also unreasonably held that these 4 non-"serious" rule violations showed Plaintiff is likely to commit new crimes if released on parole. As the record shows, Plaintiff has for many years been a voice advocating for non-violence and peaceful social change. Detailed information regarding his well-known ideas in this regard were presented and referenced at Plaintiff's 2014 and 2016 parole hearings. Instead of focusing on his long-standing message of peaceful reconciliation, the denial of parole focuses on the technical telephone rule violations to deny release on parole under a statute Congress intended to provide a "more liberal" path to release. Instead of concluding that Plaintiff's message to students of "working within the system to achieve healing and reconciliation" shows that he is rehabilitated and highly unlikely to reoffend, the Hearing Examiner and the Commission's denial of parole use the technical telephone rule violation to show he has *not* rehabilitated and he *is* likely to commit further crimes.

94. This approach dishonors what Congress sought to achieve: "[T]o assure … imprisoned inmates that parole decisions are openly reached by a fair and reasonable process after due consideration has been given [all] salient information." Conference Report, Cong Rec Feb 23, 1976, page H1222.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693
- 39 -

95.    In its summary of the final rules published in 1978, the Commission stated: "the Commission will consider the facts underlying each case to determine the severity of the institutional misconduct and will base its parole decision on that independent assessment." 43 FR 38822 (October 1, 1978).

96.    In this case the Hearing Examiner and the Notice of Action fail to consider "the severity of the institutional misconduct" and instead rely upon infrequent and minor telephone rule violations to trump an otherwise exemplary history of conduct in order to reach a predetermined outcome. That is not what Congress intended when it enacted the parole laws.

**F.    The Commission unreasonably concluded Plaintiff is likely to reoffend if released on parole because he has sometimes in the past referred to himself as a "victim" of the FBI's illegal COINTELPRO program**

97.    In 2016 Plaintiff was denied release on parole in part because he has referred to himself as a "victim of the government's counter-intelligence program" and this, according to the Parole Commission, indicates he is not rehabilitated and is likely to commit crimes if released. Notice of Action at 1 ("Additionally, you take no responsibility for the crimes for which you were convicted. Information on your website, including your writings and in a recent letter you wrote to your supporters in 2014, indicates you routinely refer to yourself as a … 'victim' of the government's counter-intelligence program.")

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 40 -

98.   As discussed above, despite being in the record, the Commission ignored

the fact that Trial Judge Haight, Jr. stated in this case that documents obtained

under the FOIA "demonstrate that for a considerable time Shakur …[has] been

the subject of illegal surveillance, harassment, and disinformation by the FBI as

part of that lamented, unconstitutional project known as COINTELPRO."

*United States v. Shakur*, 1988 U.S. Dist. LEXIS 2762, pp. 16-17 (1988).[22] A

federal judge has recognized that Plaintiff *was* a victim of the COINTELPRO

program, but the Commission, ignoring the record it is supposed to consider,

denied parole because Plaintiff "considers" himself to be a victim of the

COINTELPRO program.

99.   Despite its rule at 28 CFR § 2.55 stating that at subsequent hearings "the

Commission only considers information concerning significant developments or

changes in the prisoner's status since … a prior interim hearing," the

Commission denied parole in 2016 because Plaintiff in the past sometimes

referred to himself as a victim of the COINTELPRO program even though the

Commission had not previously relied on this reason to deny parole.

**G.    The Commission unreasonably concluded Plaintiff is likely to
reoffend if released on parole because he has sometimes referred
to himself as a "political" prisoner.**

---

[22]  In no prior Notice of Action has the Commission ever argued that a reason to
deny parole is because Plaintiff has stated he was a "victim" of COINTELPRO
before he was convicted. Raising this now, for the first time in twenty years,
shows the arbitrariness of the Commission's action in this case and violates .

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 41 -

100.   The Commission also denied parole because Plaintiff has occasionally referred to himself as a "political prisoner." Notice of Action (April 2016) at 1 ("Information on your website, including your writings and in a recent letter you wrote to your supporters in 2014, indicates you routinely refer to yourself as a … political prisoner …"); *see also* Notice of Action (November 2016) at 2 ("Specifically, you refer to yourself as  … a 'political prisoner' …").

101.   In fact, Plaintiff has respected every stage of the criminal justice process throughout 30 years of litigation and incarceration. *He has never argued that his conviction is "political" in nature*. He has said that the crimes of which he was convicted were politically motivated. The indictment itself discusses the political nature of the crimes charged.

102.   During the trial, U.S. District Judge Charles S. Haight, Jr. acknowledged the political nature of Plaintiff's history, circumstance, motivation and intentions related to his conviction. The District Court described Shakur's trial defense as follows:

> Shakur's defense had at its core the proposition that while his *political* goals were to further the fortunes of African-Americans, his means were peaceful and law-abiding, rather than violent and criminal. While Shakur did not testify in his defense, he called 26 witnesses, the majority of whom testified about Shakur's public, *political*, and non-

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

violent activities, extending over a number of years, and the concerns

about governmental persecution that Shakur harbored as a result.

*Shakur v. United States*, 32 F. Supp. 2d 651, 665 (SDNY Jan. 13, 1999)

(emphasis supplied)

103. Plaintiff's "political" goals and activities were understood and accepted by trial judge Haight, Jr., even if they did nothing to mitigate Plaintiff's guilt. Plaintiff has sometimes referred to himself as a "political" prisoner because the activities in which he engaged leading up to his conviction were motivated by political beliefs. No one should be forced to spend needless time in prison after being fully rehabilitated simply because they have referred to themselves as a political prisoner. The Commission was aware that for over twenty years Plaintiff occasionally referred to himself as a political prisoner, yet never previously relied on that information to deny him parole. This indicates the Commission's reliance on this phrase to deny parole is pretextual.

**H.    The Commission unreasonably concluded Plaintiff is likely to reoffend if released on parole because he has occasionally ended letters with the salutation "stiff resistance".**

104. Plaintiff was denied parole in 2016 because on two known occasions he ended letters or communications with the salutation "stiff resistance." Notice of Action (April 2016) at 1.

105.  As Plaintiff has explained:

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 43 -

My salutation "stiff resistance" purpose has been to serve as a

reminder and to fortify an individual's character and resolve in the

face of their specific challenges. The objective of "stiff resistance" is

now and has always been about the quality of life. I have never

intended its use to encourage criminality or terrorism, to target the

government.

Mutulu Shakur Statement submitted to the Commission (May 19, 2016).

106.    Congress could not possibly have intended that in denying parole the

Commission would entirely ignore an inmate's *substantive message of peace*

*and conciliation* for several decades and focus instead on a salutation at the

close of two letters to keep a rehabilitated inmate in prison likely until he dies.

107.    Despite its rule at 28 CFR § 2.55 stating that at subsequent hearings "the

Commission only considers information concerning significant developments or

changes in the prisoner's status since … a prior interim hearing," the

Commission denied parole in 2016 because Plaintiff on two occasions ended

letters or communications with the salutation "stiff resistance." even though the

Commission had never previously relied on this reason to deny parole.

**I.      The Commission's consideration of and retaliation against Plaintiff's
        non-violent, protected political speech violates the First Amendment.**

108.    By denying Shakur parole on the basis of his use of the phrases "stiff

resistance" and "political prisoner" and his criticism of the FBI's illegal

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

COINTELPRO, the Commission not only considered evidence irrelevant to

Plaintiff's release pursuant to § 4206(a) or (d), it unconstitutionally retaliated

against Plaintiff's protected speech.

109.  Congress intended that mandatory parole apply to all prisoners eligible

under § 4206(d) "except those offenders who have *the greatest probability of*

*committing violent offenses* following their release so that parole supervision is

part of their transition from the institutional life of imprisonment to living in the

community." Joint Explanatory Statement, H.R.Rep.No.5727, 80th Cong., 1st

Sess. reprinted in [1976] U.S.Code Cong. and Admin.News, pp. 335, 360

(emphasis added).

110.  The Commission's conclusion that Plaintiff's non-violent protected

speech is a basis for denying him parole under § 4206(d) is arbitrary, capricious

and a violation of the limited First Amendment rights prisoners possess.

**J.     The Commission considered and included irrelevant testimony from
         AUSA Jacobson and retired FBI Agent Mitchell on Plaintiff's post-
         conviction conduct during his over 30 years of federal custody and on
         Plaintiff's likelihood to commit violent offenses upon release.**

111.  Permitting the lengthy and one-sided testimonies of Assistant United

States Attorney Elliott Jacobson and retired FBI Agent David Mitchell, raises

due process concerns inasmuch as Plaintiff had no prior knowledge that Mr.

Jacobson and Mr. Mitchell's written statements and oral testimonies would be

considered by the Commission, their statements went far afield of the conduct

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

- 45 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

charged in Plaintiff's case, and they were not in a position to authoritatively

comment on Plaintiff's *current* level of remorse or rehabilitation.[23] Plaintiff and

his representative were not informed of the written statements submitted by

Jacobson and Mitchell or their intent to provide oral testimony until the day of

the hearing on April 7, 2016.

112.   After being informed of the fact that Plaintiff and counsel had not

received any prehearing disclosure in advance of the hearing as required by 28

C.F.R. § 2.55, the Hearing Examiner, Scott Kubic, indicated that he "asked the

subject if he wanted to go forward with the hearing or seek a continuance to the

next docket. [He] did advise [USPC's] next scheduled docket was not until

December 2016." Hearing Summary (April 14, 2016) at 1. This placed Plaintiff

in the position of either participating in a fundamentally unfair hearing or

---

23 Jacobson letter to USPC dated March 14, 2016, at 4-5 ("Although Shakur has spent the last thirty years in prison, he shows no signs of being rehabilitated. To our knowledge Shakur has: never admitted his guilt; never expressed one iota of remorse for the many victims of his murderous and prolonged crime spree; and never once rejected the violent tactics and ideology that resulted in his arrest and conviction."); *Id.* at 5 ("Nor is there anything in his … post-trial conduct that indicates he is inclined to do anything other than to pick up where he left off when he was arrested in 1986. … There is every reason to believe that notwithstanding the many years he spent behind bars and his age, Shakur presents a serious danger to the law abiding community if he is released on parole."); Mitchell letter to USPC dated March 24, 2016, at 4 ("Mutulu Shakur … continues to profess in video interviews and in his own writings on various websites that he is a 'political prisoner,' wrongfully targeted by the FBI. The evidence presented at trial and statements by his co-conspirators directly and convincingly contradict this absurd position.").

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

denying himself any chance at release for eight additional months, a full ten

months later than his statutorily-mandated eligibility date for mandatory parole.

113.  Shakur "stated he wished to go forward with the hearing. His

representative also indicated their wish to proceed but wished to preserve their

right to the disclosure." Hearing Summary at 2. *However, even at the hearing

the Commission did not provide disclosure as requested*. Neither Plaintiff nor his

counsel received the prehearing disclosure documents, including the letters from

Mitchell and Jacobson, until after Plaintiff submitted a FOIA request on

September 23, 2016, over five months *after* he was required to submit his

request for reconsideration of the April 2016 denial.

114.  Though 28 C.F.R. § 2.13(b) provides that "[t]he hearing examiner shall

limit or exclude any irrelevant or repetitious statement," Examiner Kubic went

as far as to include facially irrelevant testimony from Mr. Jacobson in his

summary of the hearing, stating that AUSA Jacobson "finds the subject's

apology is an empty apology … He believes the subject continues to believe in

armed struggle and any such 'conversion' is as of today." Hearing Summary

(April 14, 2016) at 5. Allowing testimony and written statements from law

enforcement officials about the post-conviction conduct of the Plaintiff almost

*thirty years after these officials were involved in the case* indicates an

inappropriate delegation of discretionary authority. The Commission is the only

entity with the discretion to deny parole and, as such, judgments about the

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 47 -

quality and sincerity of the prisoner's testimony should be made by the Commission, not delegated to other individuals within the Department of Justice who had no contact with Plaintiff for about thirty years.

115. The legislative history indicates Congress intended "that parole decision making be independent of … the investigative and prosecutorial functions of the Department of Justice." S. Rep. No. 94-648, at 21 (1976) (Conf. Rep.). This independence was intended by Congress to "guard against influence in case decisions." S. Rep. No. 94-369, at 20 (1975). However, here the Parole Commission granted undue authority to the prosecutor and investigator over matters outside their purview, such as Plaintiff's post-conviction institutional conduct and Plaintiff's current state of mind.

116. Despite its rule at 28 CFR § 2.55 stating that at subsequent hearings "the Commission only considers information concerning significant developments or changes in the prisoner's status since … a prior interim hearing," the Commission denied parole in 2016 based in part on the statements of Jacobson and Mitchell even though the Commission had never previously relied on Jacobson's and Mitchell's statements to deny parole. Nor did their statements remotely address "significant developments or changes in the prisoner's status since … a prior interim hearing,"

**K.    Data released by the Commission under the FOIA shows that the Commission has applied alleged rule violations far differently in Plaintiff's case than in any other federal inmate's case.**

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

- 48 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

117. In their FOIA Response dated September 23, 2016, the Parole Commission provided Plaintiff with Notices of Action for every Mandatory Parole Decision that the Commission issued in the past 24 months.

118. The Notices of Action issued by the Commission over the past two years show that when the Commission denied a prisoner parole based on "frequent" rule violations, the mean number of violations was 20.5 with the highest number being 53 and the lowest being 7.[24] *Plaintiff has a handful of minor rule violations in 28 years.* With regard to Plaintiff's single, 27-year old "serious" violation for a "positive" urine test, it appears that not one prisoner was denied parole based on a single rule violation involving drugs. In every case in which the Commission cited drug use as a basis of denial, it was either for frequent drug abuses or it was followed by a violent offense. Plaintiff has never incurred a single rule violation involving violent speech or conduct in over 30 years of Federal incarceration.

## FIRST CLAIM FOR RELIEF

VIOLATION OF PAROLE COMMISSION AND REORGANIZATION ACT 18 U.S.C. § 4206(D) AS INTERPRETED AND APPLIED IN 28 C.F.R. § 2.53 BY EFFECTIVELY MAKING DENIAL OF MANDATORY PAROLE A FINAL AND PERMANENT DENIAL OF PAROLE

---

[24] In the case of the prisoner denied mandatory parole for 7 rule violations, nearly all of the offenses involved serious acts of violence, including killing multiple inmates, several assaults, possessing weapons, and threatening bodily harm.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF
Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693
- 49 -

119. Plaintiff realleges and incorporates into this claim of relief the allegations made in paragraphs 1-118 of this Complaint.

120. The Commission's regulation and policy applied in this case precluding release on parole under any standard if the Commission finds an inmate ineligible for release under § 4206(d) conflicts with the Parole Commission and Reorganization Act.

121. The Commission's failure to issue standards or rules regarding its interpretation of the terms "serious" and "frequently" used in § 4206(d) leads to ad hoc and unreasonable application of these terms in parole decisions and violates the Parole Commission and Reorganization Act and prisoners' rights to due process and equal protection under the Fifth Amendment.

122. Plaintiff and those similarly situated are therefore in custody in violation of the laws of the United States.

<u>SECOND CLAIM FOR RELIEF</u>

THE BUREAU OF PRISONS VIOLATED ITS REGULATIONS, DUE PROCESS AND EQUAL PROTECTION BY CHARGING PLAINTIFF WITH AN OFFENSE NOT DEFINED IN DEFENDANT'S RULES, DESTROYING THE PRIMARY EVIDENCE ALLEGEDLY SHOWING A TELEPHONE RULE VIOLATION, ASSIGNING A HEARING DISCIPLINARY OFFICER NOT QUALIFIED UNDER BOP RULES, AND THWARTING PLAINTIFF'S ABILITY TO FILE A TIMELY APPEAL.

123. Plaintiff realleges and incorporates into this claim of relief the allegations made in paragraphs 1-118 of this Complaint.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

- 50 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

124.  The BOP violated its rules and procedures and the due process clause of the Fifth Amendment when it found Plaintiff had violated prison rules when no BOP rule states that an inmate may not be placed on a speaker phone when calling someone on the prisoner's approved telephone list and speak to other people present with the person called.

125.  The BOP violated its rules and procedures and the due process clause of the Fifth Amendment when it destroyed the tape recording of the telephone call that formed the basis for the disciplinary charge over Plaintiff's objection prior to the hearing and resolution of any appeals. BOP's Inmate Discipline Program requires that "if the inmate requests exculpatory evidence, such as video or audio surveillance, the investigator must make every effort to review and preserve the evidence." BOP Prog. Stat. 5270.09 § 541.5(b)(2) (July 8, 2011). *See also* 28 C.F.R. 541.7(e) (stating that prisoners "are entitled to make a statement and present documentary evidence to the UDC on [their] own behalf."); 28 C.F.R. § 541.8(f) (stating that prisoners "are entitled to make a statement and present documentary evidence to the DHO on [their] own behalf.").

126.  The BOP also violated Plaintiff's due process and equal protection rights by charging him with a rule violation when other similarly situated prisoners are never similarly charged.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 51 -

127.  The BOP also violated Plaintiff's right to a fair hearing when in violation of its own rules it assigned an unqualified staff member to serve as the Disciplinary Hearing Officer in this case. See 28 C.F.R. § 541.16(a).

128.  Plaintiff is therefore in custody in violation of the laws of the United States.

<u>THIRD CLAIM FOR RELIEF</u>

VIOLATION OF PAROLE COMMISSION AND REORGANIZATION ACT, AGENCY REGULATIONS, THE ADMINISTRATIVE PROCEDURES ACT, AND DUE PROCESS BY FAILING TO PROVIDE PRE-HEARING DISCLOSURES.

129.  Plaintiff realleges and incorporates into this claim of relief the allegations made in paragraphs 1-118 of this Complaint.

130.  28 U.S.C. § 4208(b) and 28 C.F.R. § 2.55 require the Commission provide certain pre-hearing disclosures to inmates appearing in parole hearings. These provisions are mandatory and so they also create a liberty interest that inmates possess to receive pre-hearing disclosures. The Commission's failure to provide full pre-hearing disclosure violated the Parole Commission and Reorganization Act, the Administrative Procedures Act, the Commission's promulgated regulations, and the due process clause of the Fifth Amendment as this failure deprived Plaintiff of a fundamentally fair parole hearing leading to the denial of release on parole.

131.  Plaintiff is therefore in custody in violation of the laws of the United States.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 52 -

## FOURTH CLAIM FOR RELIEF

THE COMMISSION VIOLATED ITS RULES, DUE PROCESS AND EQUAL PROTECTION BY RELYING UPON ALLEGEDLY ADVERSE FACTORS NOT RELIED UPON BY THE COMMISSION IN PREVIOUS PAROLE HEARINGS.

132.  Plaintiff realleges and incorporates into this claim of relief the allegations made in paragraphs 1-118 of this Complaint.

133.  Despite its rule at 28 C.F.R. § 2.55 stating that at subsequent hearings "the Commission only considers information concerning *significant developments or changes in the prisoner's status since ... a prior interim hearing*" (emphasis added), the Commission denied parole in 2016 based on numerous facts and allegedly adverse evidence the Commission had *not* relied upon in Plaintiff's 2014 parole hearing, including (i) the written submissions and testimony of U.S. Attorney Jacobson and former FBI agent Mitchell, (ii) the fact that over 30 years Plaintiff had sometimes referred to himself as a "victim" of the FBI's illegal COINTELRO program, (iii) the fact that over 30 years Plaintiff had sometimes referred to himself as a "political prisoner," (iv) the fact that over 30 years Plaintiff had sometimes signed letters with the salutation "stiff resistance, (v) the fact that in 2003 Plaintiff had minor telephone use violations, and (vi) the fact that over 27 years before the hearing Plaintiff had a rule violation for a positive drug test. In 2014 the Commission denied parole (after the Hearing Examiner recommended granting parole) because in 2013 the Plaintiff had a rule violation based on his telephone call to Professor Karen Stanford who briefly placed him

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 53 -

1  on a speakerphone so his comments supporting non-violent social change could
2
3  be heard by university students. None of these matters involved "significant
4  developments or changes in the prisoner's status since … [the] prior interim
5
6  hearing …" 28 C.F.R. § 2.55.
7  134.  Plaintiff is therefore in custody in violation of the laws of the United
8  States.
9
10                        FIFTH CLAIM FOR RELIEF
11        THE COMMISSION MISCONSTRUED THE PLAIN MEANING OF AND VIOLATED
12        18 U.S.C. § 4206(D) BY PRETEXTUALLY FINDING A SINGLE 27-YEAR-OLD
          POSITIVE DRUG TEST A "SERIOUS" VIOLATION FOREVER PRECLUDING
13        PAROLE.
14  135.  Plaintiff realleges and incorporates into this claim of relief the allegations
15  made in paragraphs 1-118 of this Complaint.
16
17  136.  Before and in 2016 the Commission failed to disclose its criteria for
18  deciding whether an old prison rule violation was "serious" preventing release
19  under 28 USC § 4206(d), and inconsistently and arbitrarily concluded some rule
20
21  violations are serious and others not, including escapes and attempted escapes,
22  which are obviously more serious than the ancient positive drug test used as a
23  basis to deny parole in this case. In other cases, the criteria the Commission has
24
25  considered whether the rule violation involved violence or potential violence
26  and whether the passage of time without the same conduct has decreased the
27  importance of the rule violation. In this case the Commission applied neither
28

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

criteria, simply concluding the 27-year-old positive drug test was a "serious"

violation precluding release under § 4206(d). The Commission's failure to issue

guidelines or standards regarding its interpretation of the term "serious" as used

in § 4206(d) and its inconsistent application of the term violates the Parole

Commission and Reorganization Act and the due process clause and equal

protection guarantee of the Fifth Amendment as this failure deprived Plaintiff of

a fundamentally fair parole hearing.

137.  Plaintiff is therefore in custody in violation of the laws of the United

States.

## SIXTH CLAIM FOR RELIEF

THE COMMISSION'S VIOLATION OF REGULATIONS, DUE PROCESS AND
EQUAL PROTECTION BY RELYING UPON PLAINTIFF'S ALLEGED 2013
TELEPHONE RULE VIOLATION

138.  Plaintiff realleges and incorporates into this claim of relief the allegations

made in paragraphs 1-118 of this Complaint.

139.  The Commission's denial of parole based on an alleged rule violation

involving a February 5, 2013 telephone call by Plaintiff to a group of university

students violates the Parole Commission and Reorganization Act and the due

process clause of the Fifth Amendment inasmuch as the Commission was fully

advised that (i) the telephone call violated no known BOP rule, (ii) the BOP

destroyed the tape recording of the call prior to the disciplinary hearing, (iii) the

BOP thwarted the Plaintiff's ability to appeal the decision of a rule violation

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

because he was in lock down when the appeal was due, and (iv) the

Disciplinary Hearing Officer was not qualified to preside over the disciplinary

hearing under BOP rules.

140.  Plaintiff is therefore in custody in violation of the laws of the United

States.

### SEVENTH CLAIM FOR RELIEF

THE COMMISSION MISCONSTRUED THE PLAIN MEANING OF AND VIOLATED 18 U.S.C. § 4206(D) WHEN IT HELD THAT A HANDFUL OF MINOR RULE VIOLATIONS OVER 30 YEARS WERE "FREQUENT".

141.  Plaintiff realleges and incorporates into this claim of relief the allegations

made in paragraphs 1-118 of this Complaint.

142.  The Commission's denial of parole based on the conclusion that Plaintiff

"frequently" violated institutional rules because of four minor non-violent rule

violations involving use of the telephones over a thirty year period is

inconsistent with and an unreasonable interpretation of § 4206(d). Section

4206(d) creates a liberty interest that inmates possess to have the Commission

adopt a consistent and rational standard for what constitutes "frequent[ ]" rule

violations and to have the rule applied consistently to Plaintiff and all similarly

situated inmates considered for release on parole. The Commission's failure to

issue guidelines or standards regarding its interpretation of the term

"frequently" as used in § 4206(d) and its inconsistent application of the term

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

violates the Parole Commission and Reorganization Act and the due process

clause and equal protection guarantee of the Fifth Amendment as this failure

deprived Plaintiff of a fundamental fair parole hearing.

143. Plaintiff is therefore in custody in violation of the laws of the United

States.

<u>EIGHTH CLAIM FOR RELIEF</u>

THE COMMISSION MISCONSTRUED AND VIOLATED 18 U.S.C. § 4206(D)
WHEN IT ERRONEOUSLY CONCLUDED PLAINTIFF IS LIKELY TO REOFFEND IF
RELEASED BECAUSE IN THE PAST HE HAS REFERRED TO HIMSELF AS A
"VICTIM" OF THE FBI'S COINTELPRO PROGRAM.

144. Plaintiff realleges and incorporates into this claim of relief the allegations

made in paragraphs 1-118 of this Complaint.

145. The Commission unreasonably and unlawfully concluded Plaintiff is

likely to reoffend if released on parole because he has referred to himself as a

"victim" of the FBI's illegal COINTELRO program. In fact, Trial Judge

Haight, Jr. stated in this case that documents obtained under the FOIA

"demonstrate that for a considerable time Shakur ...[has] been the subject of

illegal surveillance, harassment, and disinformation by the FBI as part of that

lamented, unconstitutional project known as COINTELPRO." *United States v.*

*Shakur*, 1988 U.S. Dist. LEXIS 2762, pp. 16-17 (F, 1988). The Commission

also violated its regulations by relying on Plaintiff's statement that he was a

victim of the COINTELPRO program, when it did not rely on this conduct in its

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 57 -

earlier parole hearings and decisions. Section 4206(d) creates a liberty interest

that inmates will have a fair hearing and will not be denied parole based on

false facts relied upon by the Commission contradicted by undisputed facts set

forth in the record.

146.  Plaintiff is therefore in custody in violation of the laws of the United

States.

<u>NINTH CLAIM FOR RELIEF</u>

THE COMMISSION MISCONSTRUED AND VIOLATED 18 U.S.C. § 4206(D)
WHEN IT ERRONEOUSLY CONCLUDED PLAINTIFF IS LIKELY TO REOFFEND IF
RELEASED BECAUSE IN THE PAST HE HAS REFERRED TO HIMSELF AS A
"POLITICAL" PRISONER.

147.  Plaintiff realleges and incorporates into this claim of relief the allegations

made in paragraphs 1-118 of this Complaint.

148.  The Commission unreasonably and unlawfully concluded Plaintiff is

likely to reoffend if released on parole because he has in the past referred to

himself as a "political" prisoner. Plaintiff has never argued that his conviction is

"political" in nature. He has said that the crimes of which he was convicted

were politically motivated. The indictment itself discusses the political nature of

the crimes charged. During the trial, U.S. District Judge Charles S. Haight, Jr.

acknowledged the political nature of Plaintiff's history, circumstance,

motivation and intentions related to his conviction. These facts are in the record

but were ignored by the Commission. The Commission also violated its

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 58 -

regulations by relying on Plaintiff's use of the term "political" prisoner when it did not rely on this conduct in its earlier parole hearings and decisions. Section 4206(d) creates a liberty interest that inmates will have a fair hearing, will not be denied parole based on false facts relied upon by the Commission contradicted by facts set forth in the record, and will be treated in a manner similar to similarly situated inmates seeking release on parole.

149.  Plaintiff is therefore in custody in violation of the laws of the United States.

### TENTH CLAIM FOR RELIEF

THE COMMISSION MISCONSTRUED AND VIOLATED 18 U.S.C. § 4206(D) WHEN IT ERRONEOUSLY CONCLUDED PLAINTIFF IS LIKELY TO REOFFEND IF RELEASED ON PAROLE BECAUSE HE HAS OCCASIONALLY ENDED LETTERS WITH THE SALUTATION "STIFF RESISTANCE".

150.  Plaintiff realleges and incorporates into this claim of relief the allegations made in paragraphs 1-118 of this Complaint.

151.  The Commission unreasonably and unlawfully concluded Plaintiff is likely to reoffend if released on parole because he has twice ended letters with the salutation "stiff resistance." Plaintiff made clear that the salutation "stiff resistance" has been to serve to fortify an individual's character and resolve in the face of their specific challenges, and Plaintiff has "never intended its use to encourage criminality ..." Congress could not possibly have intended that in denying parole the Commission would ignore an inmate's consistent

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

- 59 -

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

substantive message of peace and conciliation in his letters and public

statements for several decades while focusing entirely on a salutation at the

close of two letters to keep a rehabilitated inmate in prison likely until he dies.

The facts showing Plaintiff has for decades renounced crime and violence are in

the record but were ignored by the Commission. The Commission also violated

its regulations by relying on Plaintiff's "stiff resistance" salutation when it did

not rely on this conduct in its earlier parole hearings and decisions. Section

4206(d) creates a liberty interest that inmates will have a fair hearing, will not

be denied parole based on false facts relied upon by the Commission

contradicted by facts set forth in the record, and will be treated in a manner

similar to similarly situated inmates seeking release on parole.

152.  Plaintiff is therefore in custody in violation of the laws of the United

States.

### ELEVENTH CLAIM FOR RELIEF

VIOLATION OF DUE PROCESS AND EQUAL PROTECTION BY COMMISSION
ADOPTING RULE VIOLATIONS DIFFERENTLY IN PLAINTIFF'S CASE THAN IN
OTHER FEDERAL INMATES' CASES OVER THE PAST TWO YEARS

153.  Plaintiff realleges and incorporates into this claim of relief the allegations

made in paragraphs 1-118 of this Complaint.

154.  The Commission unreasonably and without any rational basis, in

violation of the equal protection guarantee of the Fifth Amendment, treated

Plaintiff's eligibility for release on parole far more harshly than the manner in

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 60 -

which it adjudicated all other parole cases during the past two years. There is no lawful basis for this disparate and discriminatory treatment. In this case the Commission failed to act as a neutral, unbiased decision-maker, and made arbitrary and result-oriented decisions aimed at denying Plaintiff release on mandatory or discretionary parole.

155. Plaintiff is therefore in custody in violation of the laws of the United States.

## TWELVE CLAIM FOR RELIEF

### FIRST AMENDMENT RETALIATION

156. Plaintiff realleges and incorporates into this claim of relief the allegations made in paragraphs 1-118 of this Complaint.

157. The Commission's focus on Plaintiff's protected non-violent political speech in its Notices of Decision violated Plaintiff's rights to political speech under the First Amendment.

158. Plaintiff is therefore in custody in violation of the laws of the United States.

## THIRTEENTH CLAIM FOR RELIEF

THE COMMISSION VIOLATED THE PAROLE COMMISSION AND REORGANIZATION ACT AND REGULATIONS PROMULGATED THEREUNDER BY CONSIDERING IRRELEVANT TESTIMONY FROM A FORMER PROSECUTOR AND FBI INVESTIGATOR AS TO PLAINTIFF'S POST-CONVICTION CONDUCT AND STATE OF MIND.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 61 -

159.  Plaintiff realleges and incorporates into this claim of relief the allegations made in paragraphs 1-118 of this Complaint.

160.   The testimony of AUSA Jacobson and retired FBI Agent Mitchell as to Plaintiff's post-conviction conduct and current state of mind and conscience were irrelevant and considered in contravention of the Commission's duties under the PCRA to remain independent of prosecutorial influence and to exclude any repetitious or irrelevant testimony.

161.  Plaintiff is therefore in custody in violation of the laws of the United States.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court:

1.   Order Plaintiff released on parole or alternatively order a prompt new parole hearing held in compliance with relevant statutes, the BOP's and the Commission's extant rules and regulations, and the Constitution;

2.   Certify a class as proposed herein and issue a declaratory judgment and permanent injunction requiring that the Commission must consider Plaintiff and similarly situated prisoners for release on parole under the terms of both 18 U.S.C. § 4206 (a) and (d), and issue standards regarding and consistently apply its interpretation of the terms "serious" and "frequently" as used in § 4206(d);

3.   Issue a declaratory judgment that the Commission's failure to provide

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

Plaintiff with pre-hearing records or evidence the Commission relied upon to deny release in 2016 violated the Parole Commission and Reorganization Act, the regulations issued thereunder, and the due process guarantee of the Fifth Amendment and issue a permanent injunction enjoining the Commission in any further parole hearing from not disclosing to Plaintiff 30 days prior to the hearing any records or evidence the Commission intends to rely upon in making a parole decision;

4. Issue a declaratory judgment that the Commission's reliance on allegedly adverse facts or evidence predating previous parole hearings and that the Commission did not rely upon in earlier hearings in order to deny parole violates the Parole Commission and Reorganization Act, the regulations issued thereunder, and the due process and equal protection guarantees of the Fifth Amendment, and issue a permanent injunction enjoining the Commission in any further parole hearing from relying on alleged adverse facts or evidence predating previous parole hearings and that the Commission did not rely upon in earlier hearings in order to deny parole;

5. Issue a declaratory judgment that the Commission's failure to issue standards and ad hoc approach regarding how it defines "serious" rule violations and whether Plaintiff has "frequently" violated rules precluding release un §4206(d) violates the Parole Commission and Reorganization Act, the regulations issued thereunder, and the due process and equal protection

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 63 -

guarantees of the Fifth Amendment, and issue a permanent injunction enjoining the Commission in any further parole hearing from denying release on parole based on Plaintiff's alleged past "serious" rule violations or having "frequently" violated rules without providing Plaintiff with the Commission's interpretation of these terms equally applied to all prisoners eligible for release under § 4206(d);

6.    Issue a declaratory judgment that the Commission's reliance on Plaintiff's past occasional reference to himself as a victim of COINTELPRO, a "political" prisoner, and twice using the salutation "stiff resistance" to deny parole violates the Parole Commission and Reorganization Act, the regulations issued thereunder, and the First Amendment and due process and equal protection guarantees of the Fifth Amendment, and issue a permanent injunction enjoining the Commission in any further parole hearing from denying release because Plaintiff in the past occasionally referred to himself as a victim of COINTELPRO, a "political" prisoner, and on two known occasions used the salutation "stiff resistance";

7.    Issue a declaratory judgment that the Commission's failure to consider Plaintiff's exemplary prison record and repeated and long-standing stand against violence to achieve social change violates the Parole Commission and Reorganization Act, the regulations issued thereunder, and the due process and equal protection guarantees of the Fifth Amendment, and issue a permanent

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 64 -

injunction enjoining the Commission in any further parole hearing from

ignoring Plaintiff's exemplary prison record and repeated and long-standing

stand against violence to achieve social change;

8.   Issue a declaratory judgment that the Commission's reliance on a 27-year

old positive drug test to deny parole violates the Parole Commission and

Reorganization Act, the regulations issued thereunder, and the due process and

equal protection guarantees of the Fifth Amendment, and issue a permanent

injunction enjoining the Commission in any further parole hearing from relying

on the twenty-seven year old drug test to deny release on parole;

9.   Issue a declaratory judgment that the Commission's reliance on old minor

telephone rule violations to deny parole because they allegedly show that

Plaintiff "frequently" violated prison rules during almost thirty years of

incarceration violates the Parole Commission and Reorganization Act, the

regulations issued thereunder, and the due process and equal protection

guarantees of the Fifth Amendment, and issue a permanent injunction enjoining

the Commission in any further parole hearing from relying on these old

telephone violations to deny release on parole because they allegedly show

Plaintiff "frequently" violated prison rules;

10.   Issue a declaratory judgment that BOP's rule violation of March 20, 2013,

and the Commission's reliance on that alleged rule violation to deny parole,

regarding Plaintiff's telephone call with a group of university students, was

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

issued and relied upon in violation of BOP rules regarding the substance of rule violations, the qualifications of Disciplinary Hearing Officers, the destruction of evidence, and the appeal rights of prisoners, and violated Plaintiff's due process and equal rights, and issue a permanent injunction requiring that the BOP vacate its finding of a rule violation and enjoining the Commission from relying on the alleged rule violation to deny Plaintiff release on parole;

11.   Award reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 3006A, 28 U.S.C. § 2412, Federal Rule of Civil Procedure 54, and any other applicable provisions of federal law; and

12.   Grant such other relief as Plaintiff may seek and law and justice require.

Dated: March 26, 2018                        PETER A. SCHEY
                                             CARLOS R. HOLGUIN
                                             CENTER FOR HUMAN RIGHTS AND
                                             CONSTITUTIONAL LAW

Peter Schey 3/26/2018 2:10 PM
Deleted: .                    ... [1]

        / / /

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

BENJAMIN L. CRUMP, ESQUIRE
PRESIDENT
NATIONAL BAR ASSOCIATION
PARKS & CRUMP, L.L.C.


MICHAEL BRENNAN
HEIDI RUMMEL
POST-CONVICTION JUSTICE PROJECT
USC GOULD SCHOOL OF LAW


PROFESSOR LENNOX S. HINDS
NATIONAL CONFERENCE OF BLACK
LAWYERS


OF COUNSEL:

MICHAEL W. WARREN
LAW OFFICE OF MICHAEL WARREN, P.C.


TERI THOMPSON
TERI THOMPSON, LLC


Signed: /s/Peter A. Schey


/ / /

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Center for Human Rights & Constitutional Law
256 S. Occidental Blvd.
Los Angeles, CA 90057
213/388-8693

- 67 -